[Civ. No. 3081. Third Appellate District.—May 25, 1926.]

STEVE ZAHOS et al., Respondents, v. E. F. LOESCHER, Appellant.

[1] CONTRACTS—CROPPING AGREEMENT—BASIS OF COMPENSATION—INTENT—INTERPRETATION OF AGREEMENT.—In this action to recover the balance alleged to be due under a certain cropping contract entered into between plaintiffs and defendant, and which provided that defendant would pay to plaintiffs for working defendant's vineyard and harvesting the crop thereon "a sum of money equal to an amount of thirty-five per cent (35%) of the gross proceeds of the crops of raisins grown or produced" thereon "during the year . . . to be figured upon the basis of what the California Associated Raisin Company pay their growers . . . during said year . . . but in any event settlement is to be made not later than December 1st" of that year, the judgment should have been based upon the full purchase price for that year's crop from said company, notwithstanding it did not fully pay the purchase price of that year's crop during that year, but only an advance payment on account of said crop and made final payment some time during the following year.

---

(1) 4 C. J., p. 883, n. 33, p. 1180, n. 21; 15 C. J., p. 257, n. 44 New; 36 C. J., p. 701, n. 62.

APPEAL from a judgment of the Superior Court of Fresno County. Stanley Murray, Judge Presiding. Affirmed in part, and reversed in part.

The facts are stated in the opinion of the court.

N. Lindsay South for Appellant.

Theodore M. Stuart for Respondents.

PLUMMER, J.—Plaintiffs had judgment for the sum of $5,940.93, balance found due by the court for and on account of a certain cropping contract entered into between the plaintiffs and the defendant. From this judgment the defendant appeals. From the record it appears that the defendant owned a vineyard and orchard consisting of about 160 acres, in the county of Fresno, state of California; that the plaintiffs were farm laborers and workers accustomed to work in vineyards and had worked in that capacity prior to December, 1921; that on or about December 1, 1921, the parties entered into a contract whereby the plaintiffs were to enter upon the premises referred to, take care of, cultivate, and gather all fruits and crops produced upon said premises, perform certain specified labor mentioned in the contract and receive for their services 35 per cent of the gross proceeds of the crops raised upon said premises. [1] The controversy in this case arises over the different interpretations sought to be given by the respective parties to the contract entered into between them. After specifying the work to be performed, the contract then takes up the subject of compensation and is couched in the following language: "The party of the first part (being the defendant in this case) agrees to pay to the parties of the second part (plaintiffs in this case) a sum of money equal to an amount of thirty-five per cent (35%) of the gross proceeds of the crops of raisins growing or produced on the above-described premises during the year 1922. Such proceeds are to be figured upon the basis of what the California Associated Raisin Company pay their growers for such varieties of raisins during said year, and thirty-five per cent (35%) of the gross proceeds of all other crops, including rootings and wood grown or produced on the above-described premises dur-

ing the same year, but in any event settlement is to be made
not later than December 1st, 1922.''

The fact that the California Associated Raisin Company
did not fully pay the purchase price of the 1922 crop of
raisins during the year 1922, but only made an advance pay-
ment on account of said crop in a sum ranging from 3½ to
4½ cents per pound and final payment some time during
the following year, time not given nor amount being testified
to, gives rise to the controversy over the interpretation of
the contract. The plaintiffs, in their complaint, set forth
''that by the terms of said agreement, defendant agreed to
pay to the plaintiffs a sum of money equal to thirty-five
per cent (35%) of the gross proceeds of all crops produced
on said premises during said year of 1922,'' which, of course,
is a correct deduction based upon the contract entered into
between the parties. The basis fixed in the contract, how-
ever, of determining the value of the gross proceeds is not
alleged in the complaint of plaintiffs. The defendant, in
view of the fact that the California Associated Raisin Com-
pany had only made a partial payment on account of the
1922 contract, after quoting the portion of the contract
setting forth that the plaintiffs were to be compensated in
a sum equal to 35 per cent of the gross proceeds of the
crop produced on the premises during the year 1922, set forth
that ''such proceeds are to be figured upon the basis of what
the California Associated Raisin Company pay to their
growers for such varieties of raisins during said year, and
thirty-five per cent (35%) of the gross proceeds of all other
crops, including rootings and wood grown or produced on
the above-described premises during the same year. That
said sum shall be accepted by the second parties (plaintiffs
herein) as and for full compensation for all work and labor
performed and materials furnished by them under this agree-
ment,'' and in this connection it is alleged ''that there was
grown and produced on said premises during said year 1922,
the following varieties of grapes, to-wit: Thompson Seedless;
Sultanas and Malagas; That the California Associated Raisin
Company during said year 1922 paid 4¼ cents per pound
for extra standard Thompson Seedless raisins and 4 cents per
pound for standard Thompson Seedless raisins and 4 cents
per pound for Sultana raisins, and 3½ cents per pound for
substandard Thompson Seedless raisins,'' which would lead to

the inference that that is all the California Associated Raisin Company paid growers for such varieties of raisins raised during the year 1922. As set forth in its answer, the allegations only state about one-half the facts. If the amount paid by the California Associated Raisin Company during the year 1922, considered as a calendar year, is to be deemed the measure by which the compensation owing to the plaintiffs is to be determined, then there should have been set forth the additional truth that the California Associated Raisin Company had also during the same year paid almost an equal amount to growers of said varieties of raisins, even though such payment was made as a final settlement for the 1921 crop. In other words, the defendant, by his pleadings, shows that if the calendar year is to be considered only, one payment made by the California Associated Raisin Company has been alleged; whereas, two payments were made.

The allegations of the plaintiffs' complaint lead to the conclusion that the interpretation of the contract, as first entertained, was that whatever was paid by the association for the 1922 crop was to be the standard by which compensation agreed to be paid the plaintiffs should be measured, but that, by some means or other, the court, in considering the words "or in any event settlement is to be made not later than December 1, 1922," led to the adoption of the standard of measuring compensation to be awarded the plaintiff by the sum paid by the California Associated Raisin Company during the calendar year 1922, irrespective of whether the payment was made upon the lap-over of the 1921 crop, or the advance payment of the 1922 crop, and considered such payments as the amount paid by the California Associated Raisin Company during the year 1922.

The defendant also sets out certain credits and offsets and the court found that the defendant was entitled to credits in the sum of $5,656.88, but did not award defendant anything upon his cross-complaint.

Adopting the final payment made by the California Associated Raisin Company on the 1921 crop during the year 1921 and also the advance or first payment on the 1922 crop made by the California Associated Raisin Company, as the basis of figuring the compensation due the plaintiffs, the court found the plaintiffs entitled to $11,597.81 and the defendant entitled to credits in the sum before mentioned of $5,656.88 and awarded plaintiffs judgment for the balance.

Upon this appeal the appellant insists that the court erred in its interpretation of the contract referred to and also in denying the defendant judgment upon his cross-complaint. Upon the cross-complaint it is sufficient to say that the testimony is conflicting and being based on a conflict of testimony, nothing else appearing, must be accepted as conclusive on appeal. What the California Associated Raisin Company paid raisin growers for the 1922 crop does not appear in the record. It does appear, however, that the defendant received the gross sum of $28,908.91 for and on account of the crop and all matters included within the terms of the contract entered into between the plaintiffs and the defendant and to the gross proceeds of which the plaintiffs are entitled to a sum of money equaling 35 per cent. If the California Associated Raisin Company paid a like price to the growers of raisins of the kind and variety produced upon the lands belonging to the defendant, then, and in that case, the figures adopted by the court in going back to the payment on the 1921 crop, give to the plaintiffs the sum of $1,479.70 in excess of what they should have been awarded. We come now to the contract itself. We think the following excerpt from the argument of the appellant correctly states the situation:

"Referring to the situation of the parties when contract was made in December, 1921, defendant owned a valuable vineyard and plaintiffs desired the opportunity of farming the same, to receive their pay out of 35% of the proceeds of the crop. Not desiring to take 35% of what the defendant sold his crops for, because the California Associated Raisin Company paid a big price for the 1921 crop, plaintiffs wanted to be paid according to what the said Association paid for the 1922 crop.

"Q. Well, with relation to this phase of the subject, what, if anything, was said about the Raisin Association, or the property being put in the Association? A. Mr. Kellas wrote that clause in the contract regarding settlement and the reason it was put in the contract was this: That the previous years, that the boys had worked on another ranch and the crop was sold for less money than what the Raisin Association paid the growers—plaintiffs wanted to be paid according to what said Association paid for the 1922 crop."

The testimony quoted in the argument of the appellant is the testimony of the defendant himself, which shows that

all parties had in mind the total sum that should be paid for the year 1922 crop by the California Associated Raisin Company, and not simply a partial payment or an advance on account of a part of the purchase price of that crop. This testimony clearly shows that none of the parties was contemplating that the standard of compensation should be only one-half the purchase price, irrespective of when defendant should pay it. It also appears from the record that the words, "In any event settlement is to be made not later than December 1, 1922," were inserted in the handwriting of the defendant. These words have nothing to do with the standard by which the compensation is to be measured. It is simply a date of settlement. The error in fixing the date of settlement at a time prior to the date upon which the prices paid by the California Associated Raisin Company could be ascertained cannot be allowed to cut the agreed compensation in two, or to admit the interpretation that a part payment on the purchase price of a preceding crop may be used in adding to the compensation. By way of illustration, it appears that there was introduced as an exhibit a copy of the contract used by the California Associated Raisin Company, a reference to which shows that the raisins grown by the members were to be delivered not later than December 1st of each year and that within six days after the receipt of the raisins an additional payment was to be made therefor and final payment during the following year as the same may be determined, after deducting expenses from receipts, etc. The contract also provides that the crop year should be deemed to be from September 1st of one year to August 31st of the succeeding year. This again enforces the conclusion that the parties had in mind the compensation to be paid according to the prices paid for the 1922 crop, and that the desire of the parties to have settlement made by December 1st has nothing to do with the interpretation that should be given to the contract.

While the defendant has insisted upon an interpretation of the contract which would award to the plaintiffs only a little over one-half of the sum to which the record shows they were entitled, it nevertheless is true that the plaintiffs have not proven that they were entitled to much over one-half the sum awarded them and that the court should have sustained the defendant's objection to the testimony relating to

the prices paid by the association on account of the 1921 crop. As to all other matters, we find no error justifying reversal. It follows from what has been said that the judgment must be reversed in so far as the value fixed upon the several varieties of raisins is concerned on the ground that the findings in relation to said raisins are not supported by the evidence, and the cause remanded to the trial court to ascertain and determine the value of the crop of raisins raised upon said premises measured by the prices paid by the California Associated Raisin Company for the 1922 crop, irrespective of the date of payment made therefor and award the plaintiffs said sum; in all other respects the judgment is affirmed, and it further appearing from an examination of the transcript of this case that the portion of the testimony brought up necessary to show that the judgment should be reversed in part and that the portion brought up necessary to show that the judgment should be affirmed in part are about equal, it is further ordered that the costs on appeal, outside of the cost of printing briefs, shall be apportioned equally to the parties herein and that the parties shall pay the costs of the preparing and printing respectively of their own briefs.

Hart, J., and Finch, P. J., concurred.